STATE of Missouri, Respondent,

v.

Burton WOODS, Jr., Appellant.

No. 35317.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 2, 1974.

John H. Marshall, Asst. Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., J. Paul Alred, St. Louis, for respondent.

KELLY, Judge.

Appellant was charged in an Amended Information filed in the Circuit Court of the City of St. Louis on January 29, 1973, with the following offenses: Count I, Attempted Robbery in the First Degree by Means of a Dangerous and Deadly Weapon; Count II, Assault with Intent to Kill with Malice Aforethought one Tommy Franklin; and Count III, Assault with Intent to Kill with Malice Aforethought one Thomas King. The Amended Information further contained an allegation pertinent to the Second Offender Act, Sec. 556.280, RSMo.1969, charging that the appellant had previously been convicted of the felonies of Burglary in the Second Degree and Stealing. After a jury trial the appellant was found guilty of the offenses charged

in Counts I and II of the Amended Information and not guilty of that charged in Count III thereof. After overruling appellant's motion for new trial with respect to Counts I and II, the trial court sentenced him to a term of fifteen (15) years in the custody of the Missouri Department of Corrections on the conviction for Attempted Robbery in the First Degree by Means of a Dangerous and Deadly Weapon and to a term of twenty five (25) years on the conviction of Assault with Intent to Kill with Malice Aforethought as charged in Count II of the Amended Information, each sentence to run concurrently.

We are called upon to consider only one point on this appeal: whether the trial court erred and abused its discretion in sustaining the State's objection to an inquiry directed to one Alfred Stewart, a witness offered by the defense, regarding a conversation with one Samuel Crump, a co-participant in the attempted robbery, wherein Crump proposed to the witness that the witness allow Crump to rob the store where the witness was employed. The appellant does not question the sufficiency of the evidence to support the convictions, and therefore it is necessary only to briefly state the facts which support the jury's findings.

On June 29, 1972, at about 10:30 P.M. the Three Pipers Lounge, at 5102 St. Louis Avenue in the City of St. Louis, Missouri, was open for business. Mildred Cody was tending the bar. There were a number of customers in the bar, among whom was Tommy Franklin, an off-duty member of the St. Louis Metropolitan Police Department. Two male Negroes entered the lounge, announced that there was a hold-up in progress, and shortly thereafter Officer Franklin shot and killed one of the hold-up men and the other then fled from the scene. In the exchange of gun-fire Thomas King was wounded by a discharge from the sawed-off shotgun in the hands of the holdup man who was killed on the scene, subsequently identified as Samuel Crump. Three or four days after the incident, Of-

ficer Franklin and Miss Cody viewed photographs of suspects and each selected a photograph of appellant as a picture of the robber who effected his escape. A line-up was conducted and there again both Miss Cody and Officer Franklin identified the appellant as the holdup man who ran from the scene.

The defense called to the stand Mr. Alfred Stewart who testified that "a day or so" prior to the attempted robbery of the Lounge, Samuel Crump and another fellow came to the Velvet Freeze Store where Stewart was employed, and he had a conversation with Crump. When counsel for appellant attempted to develop the contents of the conversation between Crump and the witness the Assistant Circuit Attorney interposed an objection on the grounds that the testimony was hearsay and was "not relevant or material to these proceedings. It's what occurred at the alleged time and place charged against this defendant, unless he first lays a foundation." After a conference at the Bench the trial judge directed that the jury be removed from the courtroom and a record was made out of the hearing of the jury. The witness testified that the other man with Crump was a fellow by the name of "Tillman" and identified a photograph as a photo of the man he knew by the name of Tillman. He further testified that on the occasion Crump came to the store with Tillman, Crump said that "they were ill" and needed a fix and asked Stewart to allow him to rob the Velvet Freeze Store. Tillman just stood there; he took no part in the conversation. Stewart replied that he couldn't allow it because he wouldn't do a thing like that and furthermore the store belonged to his brother. Crump did not tell Stewart that he had "done it" any place nor that he was planning to rob any other place. Crump then bought an ice cream cone and he and Tillman left the store together. The trial court thereupon advised counsel that he was going to sustain the objection, and explained that he was sustaining the objection only to the

contents of the conversation and that he did not intend thereby to prevent defense counsel from showing the fact that Tillman Morris was in the presence of Samuel Crump a few days before Crump was killed. The basis for sustaining the objection was that the evidence had no probative value to the issues in this case, was too remote to have any probative value and would require the jury to resort to surmise and guesswork. After the jury was returned to the courtroom and the trial resumed, appellant's counsel was permitted to adduce from Mr. Stewart that when he saw Samuel Crump a few days prior to the attempted holdup of the Lounge, Crump came to the Velvet Freeze Store where Stewart worked accompanied by a man known to him as Tillman, and proceeded to identify a photograph as a picture of the man known as Tillman. He later identified the man as Tillman Morris.

At trial appellant's defense was alibi. The theory upon which he contends that the evidence of Mr. Stewart was admissible is that Samuel Crump was a friend of Miss Cody's and with her cooperation had planned the robbery of the Three Pipers' Lounge on June 29, 1972, which went awry. That Crump's accomplice in the attempted robbery was Tillman Morris and not this appellant. That Miss Cody's identification of appellant was in fact for the purpose of concealing her participation in the ill-fated robbery which was planned much the same way as Crump had attempted to get Stewart's cooperation in the robbery of the Velvet Freeze Store proposed by Crump in the presence of Tillman Morris a couple of days prior to the unsuccessful attempt at the Lounge.

The record is devoid of any attempt by defense counsel to adduce any evidence from Miss Cody in support of this theory, nor was there any evidence whatsoever that Miss Cody had been approached by Samuel Crump with any such proposal. Appellant would have the trial court admit this evidence on a contention, unsupported

by any evidence, direct or circumstantial, that Miss Cody's sister was romantically involved with Samuel Crump and because of this relationship Miss Cody agreed to a "friendly" robbery by Crump and Tillman Morris. Miss Cody testified that she was not acquainted with Tillman Morris and there was no evidence to impeach her on this point.

While remoteness of evidence ordinarily affects the weight of the evidence rather than its admissibility, the question of materiality and relevancy will always affect its admissibility. Whether the evidence, even though relevant, is inadmissible because it is too remote to be material is a matter resting largely in the sound discretion of the trial court. State v. Feger, 340 S.W.2d 716, 725–726[20] (Mo.1960).

Evidence that another person had an opportunity or motive for committing the crime for which the defendant is on trial is not admissible absent proof that the other person committed some act directly connecting him with the crime. State v. Umfrees, 433 S.W.2d 284, 287[4] (Mo.banc 1968). "The test generally for the admission of such evidence is stated in 22A C.J. S. Criminal Law § 622b, at page 451, as follows: 'The evidence, to be admissible, must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.' "

We conclude that the proffered testimony did not directly connect Tillman Morris with the attempted robbery for which appellant was tried and convicted, and the trial court did not err in excluding evidence of the contents of the conversation at the Velvet Freeze Store as evidence

that it was Morris, and not appellant, who participated in the attempted robbery of the Lounge.

Appellant contends, however, that the testimony was admissible for the purpose of showing Miss Cody's interest in shielding her alleged complicity in agreeing to the "friendly" robbery of the Lounge which led to her identification of the appellant as the robber who effected his escape, when, in fact, it was Tillman Morris, who was also in on the plan.

It is clear that bias or prejudice in favor of or against any party may properly be shown to test the credibility of any witness and the defendant in a criminal case must be allowed much latitude in cross examination for that purpose. State v. Gordon, 499 S.W.2d 512, 514[3] (Mo. 1973); State v. Nebbitts, 498 S.W.2d 762, 764[2] (Mo.1973); State v. Pigques, 310 S.W.2d 942, 947[7] (Mo.1958). Motive for false accusation of one charged with crime by a witness for the State is a proper subject for inquiry in a criminal prosecution, and evidence to prove the motive may be developed either by cross-examination or by impeachment. Wharton's Criminal Evidence, 13th Ed., Ch. 8, Examination of Witnesses, § 435, p. 356 and Ch. 9, Impeachment of Witnesses, § 460, p. 399; Anno. 62 A.L.R.2d 612, preventing or limiting cross-examination of prosecution's witness as to his motive for testifying. The scope and extent of the cross-examination for this purpose rests, however, in the sound discretion of the trial court. State v. Pigques, *supra*, 310 S.W.2d 1. c. 947[8]. However, as the dissenting opinion in State v. Holden, 88 Ariz. 43, 352 P. 2d 705, 717 (1960) ably stated: "Impeachment must be bottomed upon something more substantial than the insinuations of the cross-examiner; nor can it be used to throw suspicion upon someone not before the court."

State v. Smith, 377 S.W.2d 241 (Mo. 1964) is of no assistance to appellant on this point, because there the defendant demonstrated the relevancy and materiality of his daughter's testimony that the prosecuting witness had made untoward advances which were offensive to her and which could be considered by the jury in determining whether it was he or she who threw acid into the face of the prosecuting witness. See also State v. Umfrees, *supra,* 433 S.W.2d 1. c. 286[3]. Here, admission into evidence of the conversation between Crump and Stewart would neither prove nor disprove any material issue, nor would it show motive on the part of Miss Cody to falsely identify appellant as one of the holdup men at the Lounge.

We conclude therefore that the trial court did not err in refusing to permit into evidence the contents of the aforesaid conversation.

We affirm.

SIMEONE and WEIER, JJ., concur.