**STATE of Missouri, Plaintiff-Respondent,**

v.

**Anthony GAY, Defendant-Appellant.**

**No. 35976.**

Missouri Court of Appeals,
St. Louis District,
Division One.

May 6, 1975.

Christopher T. Hexter, Legal Aid Society of St. Louis, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean II, William F. Arnet, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Gene Fahrenkrog, George R. Westfall, Asst. Pros. Attys., Clayton, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant was found guilty by a jury of first degree robbery by means of a dangerous and deadly weapon (§§ 560.120, 560.-135, RSMo 1969, V.A.M.S.). The court sentenced him to twenty-five years to run concurrently with the twenty year sentence he was serving for a conviction of a like offense committed the same night [see State v. Gay, 497 S.W.2d 649 (Mo.App. 1973)].

Viewing the evidence in the light most favorable to the state, defendant was one of three men who robbed a Texas Discount Service Station on May 15, 1970 at about 9:00 p. m. They held guns on the attendant and took his money changer and cash from his pocket. Inside the station's office a locked desk drawer was forced open and an adding machine was removed. After the three men left, the attendant wrote down the license number of the 1963 or 1964 maroon Chevrolet they occupied and telephoned the police. In an ensuing police chase at approximately 11:45 p. m. the defendant's auto crashed and the three men fled on foot, leaving the adding machine in the car. The defendant was arrested by police while still in the vicinity of the abandoned auto when he reached for his gun as the officers approached.

Defendant has raised ten points on appeal. We find each contention lacking in merit, and affirm the trial court's judgment.

■ Initially we must note the defendant has failed to preserve his contentions of prejudicial error on appeal. The verdict was filed October 18, 1973 and defendant was granted an additional thirty days to file his motion for a new trial, which, together with the ten days allowed by Rule 27.20(a), V.A.M.R., totaled forty days. The motion was not filed, however, until November 28, 1973, some forty-one days after October 18, 1973. A motion for a new trial not filed in conformity with Rule 27.20(a) is a nullity and preserves nothing for review. State v. Clark, 432 S. W.2d 279, 281[1] (Mo.1968). Thus each of defendant's contentions can only be considered on appeal if he establishes plain error. Rule 27.20(c). We have considered the ten points relied on by defendant on appeal in his one hundred page brief in order to search for plain error. Nothing that occurred in the trial of this case resulted, in our opinion, in manifest injustice or a miscarriage of justice. We would normally leave it at this but for the fact that under our dual system of courts the record of this case may again and again be submitted to agonizing scrutiny over whether the defendant received a fair trial and whether his constitutional rights were protected. We therefore examine the merits of defendant's contentions of error *seriatim.*

■ Defendant was arrested on May 15, 1970 and charged with three different robberies. During the interim from defendant's arrest to his trial in the instant case, on October 15, 1973, defendant was represented by eight different attorneys. Many motions were filed in his behalf and submitted. Furthermore, defendant agreed to have his case placed on the inactive docket until his appeal in another case was decided. Defendant's first contention is that he was denied his right to a speedy trial. The United States Supreme Court has said a balancing test, weighing the conduct of both the prosecution and the defendant, should be used in assessing an alleged violation of one's right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Since the three and one-half year delay was due largely to requests of the defendant, and the record shows no prejudice was in-

curred as a result, we find the defendant's constitutional right to a speedy trial was not violated. Barker v. Wingo, *supra*; State v. Rowlett, 504 S.W.2d 48, 55[4] (Mo.1973); State v. Yates, 442 S.W.2d 21, 24[3] (Mo.1969).

■ The defendant's second contention is that the court erred in allowing an in-court identification because it was based on a prior improperly conducted identification at the police station, which was so unnecessarily suggestive as to give rise to an irreparable mistaken identification, in violation of the due process clause of the Fourteenth Amendment. In evaluating the suggestiveness of a particular confrontation and the likelihood of misidentification we look to such factors as the opportunity of the witness at the time of the alleged crime, the accuracy of the witness's prior description of the accused, the certainty of the witness at the confrontation, the length of time between the crime and the confrontation, and the need for the police to determine at the earliest opportunity whether the person suspected is in fact the person sought. State v. Hudson, 508 S.W. 2d 707, 710[7] (Mo.App.1974).

■ The defendant was identified the night of the offense at the police station while in a room with three or four police officers. There is no evidence that improper suggestions were made to the witness. The identification was made immediately and unequivocally. The witness had had an opportunity to observe the defendant for ten to fifteen minutes at the filling station just a few hours before the identification. The witness had also given an accurate description of the defendant which helped lead to his arrest. This pretrial confrontation, therefore, was not suggestive or conducive to mistaken identification. Additionally, the witness had a sufficient independent basis on which he could rely for his in-court identification. See State v. Jackson, 477 S.W.2d 47, 51[4] (Mo.1972).

■ Defendant's third point alleged that his constitutional right against illegal search and seizure was violated by the introduction of evidence (a gun and photograph of the money taken from his pocket) seized during an illegal arrest. Defendant maintains he was stopped by police officers solely because he was a black man in a white neighborhood. The record, however, does not support such a conclusion. Rather defendant was stopped because he met the description on the police dispatch and was in the vicinity of the abandoned car which had been used in the robbery. When the police officers approached the defendant, the defendant reached for a gun in his waistband. Upon a search of defendant's person, a "wad of money" was found in his pocket. The test for determining the legality of an arrest without a warrant for a felony is whether the arresting officer had reasonable grounds or probable cause to suspect that the person arrested has committed a felony. State v. Gant, 490 S.W.2d 46, 47[4] (Mo.1973); State v. Ward, 457 S.W.2d 701, 705–06[6] (Mo.1970); State v. Sampson, 408 S.W.2d 84, 86[4] (Mo.1966); State v. Henderson, 510 S.W.2d 813, 818[2] (Mo.App.1974). Applying the facts of the case at bar, we see no illegal arrest upon which the defendant could rely.

■ Next, the defendant contends a photo display shown to the robbery victim before trial was unnecessarily suggestive and conducive to irreparable mistaken identification. Again the record does not support such an inference. Eight photographs were shown to the witness, all black males of normal appearance. The victim selected two, one of the defendant and the other of his co-defendant. Since there was no evidence that any of the photographs was in any way emphasized, or any improper suggestions made by the police, we see no error in the court's overruling defendant's motion to suppress the photo identification. State v. Johnigan, 494 S. W.2d 23, 24[1] (Mo.1973); State v. Balle, 442 S.W.2d 35, 39[3] (Mo.1969).

The fifth point on appeal alleges error in admitting the defendant's confessions. Defendant contends the confessions were the product of an illegal arrest and taken under conditions rendering them involuntary. As we said in response to point three, defendant's arrest was legal. Defendant's claim of involuntariness is premised on his allegations of requests for sleep and of drug influence. But where the testimony as to the events surrounding the interrogation is conflicting, as in the present case, we need not go beyond the state's version of the facts. Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). The state met its burden of proof in showing a prima facie case of voluntariness with evidence that no physical coercion was applied to the defendant, no threats or promises were made to him, and that he was given and understood his Miranda rights numerous times before defendant made his confessions. State v. Hunter, 456 S.W.2d 314, 320 (Mo.1970); State v. Garrett, 510 S.W.2d 853, 854[3] (Mo.App.1974).

Defendant's sixth contention is that the state should have been barred from introducing a statement of defendant's made to the police which was not disclosed to defendant's counsel until the day before trial. The record shows the prosecutor was not trying to conceal the statement from the defendant's counsel, but that he did not learn of it, himself, until the day before trial. The primary purpose of requiring the prosecutor to provide defense counsel with all available material concerning oral statements made by the defendant is to allow the defense to prepare for trial and especially for cross-examination. State v. Scott, 508 S.W.2d 302, 304[1] (Mo.App.1974). Counsel made no complaint about being unable to prepare for trial. The statement was similar to an oral statement made in the presence of two other officer witnesses. Defendant's attorney did, in fact, conduct a vigorous cross-examination of the circumstances surrounding the taking of this statement. We find no prejudicial error here.

Defendant's seventh point is that the trial court committed plain error in allowing the prosecutor to make certain improper comments in his closing argument which deprived the defendant of his constitutional right to a fair trial. The first allegedly improper statement was:

"Somebody is not being completely candid and honest with you. As I told you before, I have no quarrel with Mrs. Gay. She seems to be a fine woman. I am sure she loves her son. And I am really not sure if most women were put in that position where they had to balance what they felt would be helping their son at a critical point or lying under oath on the witness stand. That choice would be supremely difficult. I think Mrs. Gay made a difficult choice. And I don't think she was particularly candid with you. I don't judge or condemn her for that but ladies and gentlemen you have to balance that."

This statement does not in any way rise to the level of plain error but rather falls within the permissible bounds of commenting on the credibility of defense witnesses. State v. Barron, 465 S.W.2d 523, 529[10] (Mo.1971); State v. Griggs, 445 S.W.2d 633, 636[2] (Mo.1969).

The second comment defendant asserts was improper was:

"Now, you recall that when the husband said he came home that day, and this is early in the morning, he said he saw Anthony playing ball outside in the back-yard * * *.

"Recall I asked Mrs. Gay. And she got up at seven and went to work at ten a. m. that morning and was home that whole morning: seven to ten. And I asked what Anthony was doing at that time. She said he was downstairs

* * *. Did he go outside? I am sure he did not go outside.

"Ladies and gentlemen, you don't reconcile the two inconsistencies. The father said he was out playing ball. And the mother said he never went outside during that period. Again, a conflict, an inconsistency. Unfortunately the stories do not align."

Defendant maintains this was a deliberate misstatement of the evidence since the defendant's father actually testified that he saw his son outside in the yard after 11:30 a. m., not between 8:00 a. m. and 10:00 a. m. Defense counsel, however, in his closing argument pointed out the misstatement to the jury. Therefore, it appears that no injustice or impairment to defendant's rights occurred. Certainly such an incident does not rise to the level of plain error. State v. Agee, 474 S.W.2d 817, 820[10] (Mo.1971); State v. Gray, 423 S.W.2d 776, 787[21] (Mo.1968).

The last comment urged to have been improper was:

"Ladies and gentlemen, don't think this is an isolated proceeding. The people know what goes on in these court rooms. They wait and listen. They know when people are found not guilty when they should be found guilty. They know when people are punished. When people break the law, they deserve that."

Defendant asserts this was an inflammatory appeal designed to arouse the jurors' personal hostility toward the defendant. We disagree. The prosecutor "may legitimately argue the necessity of law enforcement as a crime deterrent, and he may argue also that the responsibility for the suppression of crime and the protection of the public rests upon the trial juries." State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 306[7] (Mo. banc 1956). *See* State v. Crawford, 478 S.W.2d 314, 320[14] (Mo. 1972); State v. Charlton, 465 S.W.2d 502, 504–05[2] (Mo.1971).

The eighth point defendant raises is that the testimony of three state witnesses was erroneously admitted by the trial court because the testimony brought in evidence of separate and distinct crimes from the charged offense. Ollie Sherman testified that the defendant was at his Fina gas station between the time of the robbery of the Texas Discount Service Station and the police chase which led to defendant's arrest. His description of the car in which the defendant was riding, including the license number, was identical to that given by the victim of the robbery. Although no mention was made of the robbery that also occurred at the Fina station, defendant attacks this testimony as evidence of defendant's other criminal activities the night of the charged offense. Defendant's claim is without merit; the testimony is entirely relevant to placing the defendant in the car used at the robbery. Even if this testimony was considered evidence of another crime, it would withstand attack since it is generally held evidence of another crime can be competent to prove the specific crime charged if it tends to establish: (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person on trial charged with the commission of the crime. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954); State v. Hudson, 521 S.W.2d 41, (Mo.App.1975).

Next, the defendant contends the arresting police officer's testimony was inadmissible because it contained evidence of the separate crime of carrying a concealed weapon. It has long been settled that evidence is admissible showing the defendant prior to or shortly after the particular crime possessed articles or weapons with which the charged crime may have been committed. State v. Stancliff, 467 S.W.2d 26, 30[1] (Mo.1971); State v. Taylor, 506 S.W.2d 94, 95[2] (Mo.App.1974).

Defendant also asserts that the prosecutor's directing a policeman to read only two paragraphs from the defendant's five page confession indicated to the jury that the defendant committed other crimes that night. The entire confession was not seen or heard by the jury. Any reference to the commission of other crimes was not read to the jury. Defendant's contention of prejudice is without merit.

Defendant's final two points concern the jury instructions. Defendant first contends the instruction describing the burden of proof was in error. The pertinent portion of the instruction was as follows:

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of the defendant's innocence."

Defendant argues that by defining reasonable doubt as "substantial doubt" the state's burden of proof was unconstitutionally lessened. This argument has been continuously rejected by our courts since 1857 and needs no further discussion here. State v. Scott, 491 S.W.2d 514, 520[11] (Mo. banc 1973). Although MAI–CR 2.20, the new instruction on burden of proof effective January 1, 1974, omits a definition of reasonable doubt, it does not follow that the instruction given in the case at the bar was erroneous. State v. Martin, 511 S.W.2d 777, 778[2] (Mo.1974).

Defendant's final argument on appeal is that the falsus in uno, falsus in omnibus [1] clause of an instruction was error because the record did not suggest any of the witnesses swore falsely. We do not agree with the defendant's reading of the

record. Testimony as to the defendant's whereabouts at the time of the crime was conflicting. The robbery victim identified the defendant as one of the men who robbed him between 9:00 p. m. and 9:15 p. m. on May 15, 1970. Defendant's parents testified he was at home at the time of the robbery. And police officers testified that defendant admitted participating in the robbery. The court, therefore, did not abuse its discretion in giving the instruction. State v. Crow, 486 S.W.2d 248, 254[8] (Mo.1972); State v. Summerville, 419 S.W.2d 38, 40[4] (Mo.1967).

Finding all ten points not only failing to rise to the level of plain error but also lacking in merit, we affirm the judgment.

DOWD, Acting P. J., and RENDLEN, J., concur.

---

1. The relevant portion of Instruction No. 9 was as follows: "In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any fact or facts material to the issues in this case, then you must reject such portion of the testimony as you believe to be false, if any, and you are at liberty to reject all other portions of such witness' testimony."