STATE of Missouri, Respondent,

v.

Wesley John WELLS, Appellant.

No. KCD28478.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 15, 1977.

Application to Transfer Denied
June 14, 1977.

Richard J. Yocum, Asst. Public Defender, 5th Judicial Circuit, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

The defendant was convicted by a jury of burglary and stealing and sentenced by the court, as a second offender, to concurrent sentences of five years for each offense.

There is no issue that the evidence was not sufficient for conviction, so we recite only that testimony which bears on the contentions raised on this appeal.

There was evidence that when Wayne Wilson left his residence that morning the windows and doors were closed and the contents of his home were in order. When he returned that evening, the door was unlocked and his property was in disarray. Among the belongings missing were a medical identification card for his wife upon which his signature appeared [Exhibit 1], his social security card [Exhibit 2] and a .38 caliber revolver [Exhibit 3]. These items of property were later found in the possession of the defendant during an arrest for a different offense and resulted in his conviction for burglary and stealing. These events are explained by the testimony of McKinley, Butner and Darenkamp, all members of the Atchison, Kansas, police force.

On the evening following the burglary, Officer McKinley [then off duty] was on a visit at the home of a friend in Atchison, Kansas. Among those present was the defendant who posed as Jim Wilson. McKinley and the defendant left for a store to replenish the beer supply and stopped off at the home of a neighbor. There, joined by other guests, they shared beer and badinage. During the course of casual conversation, the defendant recounted his days in the service and other matters—one subject of this appeal—which we later relate in appropriate detail.

When the defendant left McKinley he appeared to be somewhat drunk, so the officer suggested to him that he not drive because of the danger to children in the neighborhood. Also, en route to the liquor store, the defendant had shown McKinley a revolver under the car seat. This prompted him, about six-thirty that evening, to call the Atchison Police Department and inform Sgt. Ryan, the officer in charge, that the defendant was operating a described car bearing a described numbered license plate while intoxicated and that he was then in the possession of a concealed weapon.

The dispatch of this information was received over the police radio by Officer Butner at about 8:15 that evening, and shortly thereafter he was notified the car was headed in the direction of the Missouri River bridge in Atchison. The vehicle was detected as it turned onto a parking lot in the vicinity, and so the police car followed. As the defendant stepped away from his vehicle, Officer Butner confronted him and asked for driver identification. The defendant could not produce one, so Officer Darenkamp [who had joined them by that time] asked for other identification. The defendant complied by tendering an insurance identification card issued by the International Brotherhood of Teamsters in the name of *Wayne E. Wilson* [Exhibit 1] and a social security card with the name *Wayne E. Wilson.* [Exhibit 2] The defendant was given a traffic citation for operation of a motor vehicle without a license and the defendant acknowledged the summons with the writing *Wayne E. Wilson.* Officer Darenkamp then requested and received his permission to look into the car. The officer opened the front door and saw a revolver on the floor in plain view. The pistol was taken into custody, the serial number recorded, and at the trial identified by the officer as the weapon he had taken from the automobile.

■ The first point of error relates to the narration into evidence of a portion of the conversation by the defendant to Officer McKinley and others in their company:

A. [McKinley] . . . Everybody was carrying on a conversation at that time.

Q. What occurred then?

A. Well, during that time he was referring to that he was in the service before and had got kicked out, or something. He mentioned about Colorado, and he was talking about armed robbery. . . .

The counsel for defendant made the objection that the testimony was about an armed robbery, a crime not charged. He moved the jury be instructed to disregard that

answer and also for a mistrial. The court observed that the testimony did not convey the meaning that the defendant did an armed robbery. The court thereupon instructed the jury to disregard the reference to the armed robbery but denied the mistrial. The defendant contends that nothing short of mistrial was sufficiently remedial so that the ruling of the court was error.

It is evident from the colloquy between court and counsel after the objection, that the purpose of the question which elicited the response was to show that the defendant had displayed a gun to the witness, the same weapon taken from the burglary for which the defendant stood accused. The witness, instead, began his response by relating the conversation among the defendant and the other social guests which rambled from one subject to another. Taken in this undoubted context, the testimony of a Colorado armed robbery came in by inadvertence. The mention was voluntary and casual, without hint of connivance or intention to do prejudice. Such errors cannot always be avoided. The remedy lies with the trial court and the exercise of a discretion which evaluates the entire state of the trial to determine whether something short of a mistrial will overcome the error. *State v. McClain*, 531 S.W.2d 40, 44 (Mo.App. 1975). The record discloses no basis for disagreement that the trial court acted wisely and effectively by his instruction to the jury to disregard the reference to armed robbery and by the denial of mistrial.

The second point contends that Exhibits 1, 2 and 3, the identification cards and revolver, were taken as the result of an unlawful seizure of the defendant, and so the conviction which rests on that evidence cannot stand. The precise contention made on this appeal is that the offenses reported by Officer McKinley through the dispatcher to Officer Butner—carrying a concealed weapon [§ 21–4201(1)(d) and (4), KSA, 1974 Supp.] and driving while intoxicated [§ 8–1567, KSA, 1974 Supp.]—were misdemeanors actionable by Officer McKinley because committed in his presence but beyond the authority of Officer Butner who knew of it only by report. Thus, the contention concludes, the seizure of the defendant by Officer Butner was without authority of law and the search which followed yielded illegal evidence.

■ The defendant concedes this ground for objection was not made at trial or otherwise preserved by the pre-trial procedure defined in § 542.296 Laws 1974, p. 922 § 8, but nevertheless requests review of the question under plain error Rule 27.20(c). We grant review because the subject of his contention is a right guaranteed under the Fourth and Fourteenth Amendments of the Federal Constitution *and* because, despite lack of compliance with the requirements of orderly State procedures, the record before us sufficiently defines the contention for our informed determination. *State v. Dayton*, 535 S.W.2d 469, 475[1–5] (Mo.App. 1976). It is evident as well that the evidence revealed by the seizure was the only basis for conviction, and if that evidence was incompetent as defendant insists, imprisonment was without proof of a crime, that is—without due process of law, and subject to review under Rule 27.20(c). *State v. Sockel*, 490 S.W.2d 336, 339[3, 4] (Mo.App.1973).

■ The argument of the defendant misconceives the law of Kansas where the act of seizure occurred and which governs the validity of that procedure. *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The statutory law of Kansas [§ 22–2401, KSA, 1974 Supp.] clearly authorizes a law enforcement officer to arrest a person not only when

(d) Any crime has been or is being committed by such person in his view.

But also when the officer

(c)   .   .   .   has probable cause to believe that the person is committing *or has committed*

(2) A misdemeanor   .   .   .
   (Emphasis supplied.)

Whatever authority may have been wielded by *In re Kellam*, 55 Kan. 700, 41 P. 960

(1895) as the earlier rule in Kansas—that arrest for misdemeanor may be only for conduct committed within the presence and sight of the officer—has been modified by the recent enactment of § 22–2401. This section has been construed by the Kansas Supreme Court to justify an arrest without warrant by an officer who has not observed a misdemeanor where his information reliably shows exigent circumstances surround the criminal conduct. *State v. Schur,* 217 Kan. 741, 538 P.2d 689, 695[10, 12] (1975). In this case, the danger presented by the possession of a concealed weapon in a moving vehicle by an intoxicated driver constitute such circumstances and render § 22–2401(c)(2) operative rather than the rule of *In re Kellam, supra.*

There can be little doubt that Officer McKinley, although not on active duty, was empowered by his office to make the arrest of the defendant for the concealment of the weapon or for the driving offense [Fisher, Laws of Arrest, (1967) § 21] even though prudence may have prompted reference of the offenses to other officers armed and better equipped for that purpose. The description of these misdemeanors committed in his view to other officers was a reliable source of probable cause for their interception of the defendant and his subsequent arrest. It follows, then, that the request by Officer Butner for identification which yielded the medical and social security cards [Exhibits 1 and 2] was a valid investigation upon probable cause and these items were properly used as evidence on the trial for burglary and stealing. *State v. McCoy,* 207 Kan. 87, 483 P.2d 489 (1971).

■ The other item of property [Exhibit 2 the revolver] used to convict the defendant of burglary and stealing was taken from him only after he had granted Officer Darenkamp permission to open the car and search. The revolver was found lying open to view on the floor by the front seat of the vehicle. A consensual search did not violate the constitutional provisions against unreasonable searches and seizures. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The defendant argues, nevertheless, that although he gave permission to the search of his automobile, the consent was not voluntary because he was not informed he had a right to refuse, his consent was coerced—or at least his state of mind was vulnerable to such suggestion, and he was intoxicated and so his voluntary conduct was impaired. *Schneckloth* treats the same question and holds [l. c. 248, 93 S.Ct. at 2059]:

Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

The defendant did not challenge the competency of this evidence by pre-trial motion or by those other procedures for an orderly determination of the validity of the search and seizure established by law for his protection. § 542.296, Rule 33.01. There is no gauge for his state of mind at the time of his consent to Officer Darenkamp other than that which the record describes. The testimony of the officer, although somewhat equivocal, establishes that he informed the defendant he did not have to consent to the search, and that consent nonetheless was given. There is no other evidence on the issue. There is simply nothing which sustains the claim of involuntary accession.

■ This contention, in any event, is quite beside the point. A search incident to a lawful arrest—that is, upon probable cause—requires no consent; it is an exercise of duty within the constitutional principles. *Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The Kansas statute enables a law enforcement officer to arrest upon probable cause that a person has committed a misdemeanor. That probable cause was established by the information from Officer McKinley to the other officers who intercepted the defendant and conducted the search that the defendant was in the commission of two crimes, operation of a vehicle while intoxi-

cated and concealment of a weapon. It was for precisely the purpose to seize the concealed weapon that the request to search the automobile was made—according to the testimony of Officer Darenkamp. It can be of no consequence that by the time search was made, the weapon was no longer concealed, but was in open view. At the time the information was conveyed, the officer witnessed an offense, and so probable cause was established.

The point is without merit.

The conviction is affirmed.

All concur.