**STATE of Missouri, Plaintiff-Respondent,**

v.

**Enoch BUTLER, Defendant-Appellant.**

**No. 37665.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

March 22, 1977.

Huck, Kasten & LaBeaume, Graham W. LaBeaume, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., David L. Baylard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Presiding Judge.

Defendant appeals from a judgment of conviction entered by the Circuit Court of the City of St. Louis finding him guilty of first degree robbery by means of a dangerous and deadly weapon, and a sentence of ten (10) years in the Missouri Department of Corrections pursuant to the Second Offender Act, § 556.280, RSMo 1969. For reversal, the defendant urges that the trial court erred: (1) in denying his motion for mistrial based upon allegedly improper voir dire; (2) in overruling defendant's objections to questions by the Assistant Circuit Attorney to a defense witness which assumed a fact not in evidence; and (3) in overruling the defendant's objection to statements made by the Assistant Circuit Attorney during his closing argument as to the credibility of Mrs. Hudson, defendant's grandmother. We find no merit in these allegations of error and accordingly, affirm.

Because the defendant does not question the sufficiency of the evidence, we shall give only a brief review of the facts. On April 21, 1975, at 10:00 a. m., an individual identified as the defendant and another man robbed a Jack-in-the-Box restaurant, on Kingshighway Boulevard. Both men came up to the counter and pulled their guns, the other individual announced, "This is a holdup." The individual identified as the defendant jumped over the counter, replaced the gun in his breeches, took approximately twenty (20) dollars from the cash register, and ran out the Kingshighway door. Meanwhile the other individual had gone upstairs and returned a minute or two later with the manager, at gunpoint. He immediately left out the back door with $1500 in cash, taken from the upstairs safe. A few days later, Mrs. Jeanetta English, the Jack-in-the-Box employee who was working at the counter at the time of the robbery, identified the defendant as the man who stole the twenty (20) dollars from the cash register.

Appellant's defense was based upon the testimony of his grandmother with whom he lived. She stated that Dwayne Ransom, a friend of the defendant's came to see Butler about 9:00 a. m. on April 21. The two men had a short conversation, after which Mr. Ransom left and the defendant returned to bed until 11:30 a. m. when Mr. Ransom returned to see Butler.

Based on the above evidence the jury found the defendant guilty of first degree robbery.

Appellant's first claim of error is that the trial court failed to grant his motion for a mistrial for improper voir dire.

The following exchange took place between the prosecuting attorney, Mr. O'Toole and Mr. Charles Westbrook, a venireman during voir dire:

"MR. O'TOOLE: Do you have a son named Charlie?

"MR. WESTBROOK: Right.

"MR. O'TOOLE: Did you used to live over on Swan, near Manchester?

"MR. WESTBROOK: No, I lived at Norfolk and Newstead.

"MR. O'TOOLE: Yeah, I used to know your son because I used to work at the YMCA. He's a good kid."

Defendant relying on *State v. Holliman*, 529 S.W.2d 932 (Mo.App.1975), argues that these comments indicating that the prospective juror was acquainted with the prosecuting attorney were prejudicial. As such, they deny the defendant his right to a full panel of qualified jurors before he makes peremptory challenges. Nothing in the transcript shows that defendant in fact used one of his peremptory challenges to remove Mr. Westbrook. The only thing we have is defendant's bald assertion contained in his brief that he used a peremptory challenge to remove the venireman. We do not, however, decide the issue on this basis.

The trial court did not err in finding that this questioning was not prejudicial as to this juror or to the jury as a whole, or in denying the motion for mistrial. In the *Holliman* case, supra, relied on by the defendant it was the cumulative effect of the venireman's relationship with the victim which rendered it error not to sustain the challenge for cause. In that case the challenged juror knew the slain policeman, was a friend of the policeman's father, had a son who not only was a policeman subjected to the same danger but was also assigned to the same district where the killing had occurred. *State v. Holliman,* supra. The tenuous acquaintance established between Mr. O'Toole and Mr. Westbrook cannot compare to the close relationship in *Holliman.* Moreover, the courts have been willing to find a juror competent in spite of a close relationship between that juror and counsel. *State v. Doepke,* 536 S.W.2d 950 (Mo.App.

1976) (The trial court did not abuse its discretion in denying a motion to quash the jury panel even though the prosecuting attorney was known to all jury members.) (*State v. Grant,* 394 S.W.2d 285, 289 (Mo. 1965) (The trial court did not err in failing to sustain the challenge of a prospective juror who had known the prosecutor all his life and was represented by the prosecutor "in any legal matters [he] might have.") *State v. Jones,* 64 Mo. 391 (1877) (That the juror was the father-in-law of the prosecuting attorney did not render him incompetent.)

■ Even if the above remarks were prejudicial as to Mr. Westbrook a mistrial and discharge of the entire jury panel is an inappropriate remedy. A mistrial is reserved for more serious errors. Whereas the defendant could have used the less drastic challenge for cause the record does not disclose that he even made such a challenge so as to allow the trial court to rule on it. In addition, the disqualification of an individual juror for bias is not sufficient grounds for a challenge of the entire panel. *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo. 1954).

■ Lastly, even if the remarks were prejudicial, any objection to them was waived by the defendant when he expressly accepted the panel as satisfactory. *State v. Turnbough,* 498 S.W.2d 567, 570 (Mo.1973).

In light of the standard of review in *Holliman,* supra (the decision of the trial judge to include a juror is reversible "only for an abuse of discretion and 'all doubts should be resolved in favor of the finding of the trial court.'") and the minimal acquaintance established between the venireman and Mr. O'Toole, the trial court should be affirmed.

■ The second error claimed by the defendant is that the questions asked by the prosecuting attorney when cross-examining the defense witness, Mrs. Hudson, assume facts not in evidence and were argumentative. In substance the prosecutor asked Mrs. Hudson if she was aware that her grandson bought a car the day after the

robbery, if she had seen him driving a car, and if she saw a car parked outside her house. To all questions she responded negatively.

The state does not discuss whether these questions were, in fact, improper but claims that even if they were, any prejudicial effect they may have had was cured by the answers given. Recently the Supreme Court reaffirmed this principle. *State v. Hemphill,* 460 S.W.2d 648 (Mo.1970) (Question which sought evidence of unrelated crime held improper but because the answer was negative, the testimony did not show facts counsel claimed were inadmissible and, therefore, there was no error.) *State v. Kinnamon,* 314 Mo. 662, 285 S.W. 62, 64 (1926) (Questions with regard to declarations made and acts done after the purpose of the alleged conspiracy were held improper, but because the negative answers tended to exonerate the defendant, there was no error.) *State v. Davis,* 284 Mo. 695, 225 S.W. 707 (1920) (Question which asked for a conclusion by the witness was improper but the defendant was not harmed because the answer given by the witness was a specific fact.)

To support his case the defendant relies on *State v. Woods,* 508 S.W.2d 297 (Mo.App. 1974) for the principle that " 'Impeachment must be bottomed on something more substantial than the insinuations of the cross-examiner.' " From this, the defendant argues that because no evidence was introduced to support these questions, they too were based merely on insinuations by the prosecutor. Besides the fact that this argument goes to the propriety or impropriety of the questions, which is not debated, this principle has limited precedential value for the case at hand. In *State v. Woods,* supra, this court affirmed the trial court's refusal to admit evidence on the grounds that the only indication that the event with which the evidence was concerned had any relation to the robbery in question was the insinuations by the defense. That case cannot be controlling here because in *Woods* the question was admissibility of impeach-

ing evidence, while here it is the propriety of cross-examination.

Lastly, the instructions given to the jury by the court not to assume as true any fact solely because it was included in a question asked, served to remove any possible prejudice caused by the prosecutor's questions. *Cf. State v. Ware,* 449 S.W.2d 624, 626 (Mo.1970); *State v. McFadden,* 530 S.W.2d 440, 443 (Mo.App.1975) (In both of these cases where the court held that the instructions removed possible prejudice of improper questions, the questions were also stricken from the record.)

In summary, because any possible prejudice resulting from the allegedly improper questions was removed by the answers given and the instructions to the jury, they are not cause for reversal.

■ The defendant's last allegation of error is that the prosecutor's closing remarks as to the common experience of parents and grandparents testifying for their children was prejudicial. In closing, Mr. O'Toole stated:

" . . . As I pointed out before, she's down here trying to help her grandson who's in trouble. If these walls to these courtrooms had voices, they'd tell you numerous stories of parents—

[Objection made and overruled]
—endless stories of people who come down to try to help their sons and daughters in trouble.

[Objection made and overruled]
That is what I'm pointing out, ladies and gentlemen. That is our common experience. Relatives want to help their sons out, and Mrs. Hudson is the type of grandmother, the type of woman who wants to help her grandson out. . . ."

This argument was not improper as indicated by this court's holding in *State v. Gay,* 523 S.W.2d 138, 143 (Mo.App.1975) where a prosecutor's similar challenge to the credibility of the defendant's mother was upheld. There the prosecutor stated that it was a difficult choice to balance helping one's son and lying under oath and

he thought Mrs. Gay had been less than candid.

 Defendant alleges that this type of argument is not supported by the evidence. However, such an assertion ignores the development of this principle in Missouri cases. Concededly a prosecutor can comment on the credibility of witnesses only as long as his comments are supported by the evidence. *State v. Griggs*, 445 S.W.2d 633 (Mo.1969). Applying this principle, this court in *State v. Franklin,* 526 S.W.2d 86, 90 (Mo.App.1975), held that evidence that the principal defense witness "liked" the defendant supported the prosecutor's attacks on her credibility. In *State v. Gay,* supra, and the present case this principle is similarly applicable because even though evidence has not been directly introduced to show that Mrs. Hudson or Mrs. Gay "liked" their offspring or were partial to them, it is a valid assumption. Thus attacks upon the credibility of the defendant's mother or grandmother are as much supported by the evidence as were the attacks on the defendant's girlfriend in *Franklin,* supra. Therefore, this argument was proper and is not grounds for reversal.

Accordingly, judgment is affirmed.

SMITH and STEWART, JJ., concur.