STATE of Missouri,
Plaintiff-Respondent,

v.

Sandra K. CALLAHAN,
Defendant-Appellant.

No. WD 33364.

Missouri Court of Appeals,
Western District.

Oct. 12, 1982.

William M. Barvick, Jefferson City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, William K. Haas, Asst. Atty. Gen., for plaintiff-respondent.

Before SHANGLER, P.J., and PRITCH-ARD and DIXON, JJ.

DIXON, Judge.

Defendant, jury convicted and sentenced to six months in jail on a charge of burning an automobile in violation of § 569.055 RSMo 1978, appeals.

The two related issues asserted are: definition by prosecutor of reasonable doubt during voir dire, and error in cross-examination of the defendant resulting in hearsay evidence being admitted directly bearing on the issue of guilt.

Defendant occupied the basement apartment of a house rented by complaining witness Roark. Roark lived in the upper levels of the house with his wife and children. There was a dispute regarding the terms of the living arrangement, Roark claiming that defendant was to pay $75 per month for rent, and defendant claiming she was assured she could live there free, but voluntarily paid $75 per month. A receipt for rent from December 2, 1980, to January 2, 1981, was in evidence. Defendant claimed that Roark made no requests for further rent until it became clear to him that defendant would not have sexual relations with him. She recited an instance when Roark entered her room in the middle of the night, jumped into the bed with defendant, and propositioned her. Roark's wife corroborated this story, having followed her husband into the basement apartment and found him on the bed with defendant. Further, Roark admitted asking "Mrs. Callahan if she would like to go out." When questioned whether she believed her husband's claim to have asked defendant out only one time, Mrs. Roark responded, "I don't know."

On the evening of January 18, 1981, Roark and a friend went to the house in which the Roarks and defendant lived. Roark proceeded to remove defendant's belongings from the apartment (defendant was absent) as he had warned her he would because she had not paid rent. The friend who accompanied Roark, named Dennis Wheat, was engaged in examining the furnace, which was located in the basement, while Roark removed defendant's belongings. Wheat testified that Roark had requested that Wheat accompany him for the purpose of examining the broken furnace. Wheat discovered that wires had been torn off the furnace, cutting off heat in the house.

After Roark had removed defendant's belongings, he and Wheat nailed the door shut and drove away from the house in Wheat's car. The two then observed defendant's car approaching the house from an opposite direction. Roark urged stopping the car so that the two could observe defendant's actions at the house. Accompanying defendant in her car was a friend named Joanna. The Wheat car pulled around and parked in a construction site about 60 to 65 feet from the house. Wheat testified that nothing obstructed their view of the house and driveway, and that the area was lit by streetlights. The time was approximately 10:30 p.m.

Roark and Wheat testified that they observed defendant, who was angry upon finding her belongings strewn about the yard, throw something through the basement window in an effort to gain access to the apartment. Defendant admitted breaking the window. Wheat testified that defendant "said a lot of ... cuss words." Both Roark and Wheat testified that defendant then walked over to Roark's 1964 Dodge, opened the front car door, threw something in the car, shut the door, and ran back to her car and drove away.

Upon arriving at the scene, Wheat and Roark discovered the car seat in flames and determined to contact the authorities (there was no phone in the house). They drove a few blocks and encountered a cruising police car. The fire department was called and extinguished the fire.

The police officer testified that defendant voluntarily went down to the police station later that night (12:30 a.m.), where she was advised of her Miranda rights. Defendant at first denied having any knowledge of the events at the Roark house that evening, then admitted being at the house at approximately 10:30. She denied setting fire to the car.

At trial defendant testified she went to the house with her friend Joanna at about 6:00 in the evening, gathered her clothes, broke the window in an attempt to get inside, and then left. Defendant denied telling the officer that she had been at the house around 10:30 p.m.

■ The prosecutor was allowed to comment during voir dire, over objection, as to the standard of reasonable doubt. It is error for the judge, the prosecutor, or a venireman to comment on the phrase "reasonable doubt." *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo. banc 1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); *State v. Lasley,* 583 S.W.2d 511, 514 (Mo. banc 1979); *State v. Hurst,* 612 S.W.2d 846, 852 (Mo.App.1981); *State v. Van,* 543 S.W.2d 827, 830 (Mo.App. 1976); Notes on Use following MAI–CR 2.20. In the instant case, the prosecutor made the following comments to the venire panel:

> In a criminal case the defendant, Mrs. Callahan, is presumed to be innocent. In other words, the fact that I have charged her with a crime means that I now have got to bring you some evidence to support that charge. I have to put up or shut up, in other words. Is there anyone on this panel who doesn't agree that this is the way that the process should work, that I have to prove that she is guilty, she does not have to prove that she is innocent; she starts out innocent—[OBJECTION] —* * * As the attorney for the people of Missouri, I have the burden of proving the defendant's guilt beyond a reasonable doubt. Does anyone on this panel disagree with the standard of reasonable doubt? Would any of you, for example, hold me to proving the defendant's guilt against another standard of proof; do you feel I should do something more than prove it beyond a reasonable doubt? [OBJECTION] * * * Can everyone on this panel see the distinction between proof beyond a reasonable doubt and proof beyond a shadow of a doubt; can you all see there is a difference?

■ Under settled Missouri law, such comments by the prosecutor were clearly improper. Such error is presumed to be prejudicial but may be harmless if it is harmless in the context of the case. *State v. Van, supra.* The remark in the instant case is analogous to the remark in *Van.* But because the facts of the instant case throw into doubt the credibility of the complaining witness's testimony, error in this case is more likely prejudicial than it was in *Van.* Standing alone, the prosecutor's remarks would present a very close issue; but the error must be considered with an issue of fundamental error raised by defendant.

■ Defendant complains of the trial court action in allowing the prosecution on cross-examination of the defendant to put before the jury the hearsay statement of the defendant's companion, Joanna Brown. During his cross-examination, the prosecutor established that Joanna Brown was a friend of defendant and had accompanied her to the house the evening of the fire. The prosecutor then asked defendant, "[d]o you know of any reason why she would say it was 10:30 in the evening?" "She," of course, was Joanna Brown. Ms. Brown was out of the state at the time of trial. At bench conference, the prosecutor informed the judge that he had a signed statement from Joanna Brown to the effect that defendant was at the scene around 10:30 in the evening. The prosecutor's question thus inserted into the proceeding the assertion by the unavailable declarant that defendant had been at the house at 10:30, a fact in accord with the testimony of Roark and Wheat and the police officer, but denied by defendant.

In the briefing in this court, the defendant asserts that cross-examination of the defendant introduced hearsay evidence to the jury and denied her her right to confront witnesses as guaranteed by the sixth amendment to the United States Constitution and Mo. Const. Art. I, § 18, subparagraph a. The objection to the question was overruled by the trial court, but the defendant did not raise the issue in the motion for new trial, and, as the state correctly urges, the issue must be considered under Rule 29.12(b). The issue arises in the following way.

Defendant argues that the trial court committed error in allowing the question because it assumed as true facts that were not in evidence and cites *State v. Selle,* 367 S.W.2d 522 (Mo.1963), and *Hawley v. Mer-*

*ritt,* 452 S.W.2d 604 (Mo.App.1970), in support. In *Selle,* the defendant was accused of assault with malice aforethought and beating victim with fists with force likely to produce death or great bodily harm with felonious intent to ravish and rape. In his cross-examination of Selle's character witnesses, the prosecutor asked a series of hypothetical questions, each of which improperly assumed facts and called for an opinion. The court held that the questions constituted prejudicial error and remanded for new trial even though the trial court had sustained defendant's objection to the question. The court observed that "prosecuting officials should not be permitted in this fashion to convey to the jury by innuendo and insinuation purported information which they are forbidden to impart directly." *State v. Selle,* 367 S.W.2d at 530.

The state contends that any error caused by the prosecutor's question was cured by MAI–CR 2d 2.02 and the fact that appellant responded negatively to the question. In *State v. Butler,* 549 S.W.2d 578 (Mo.App. 1977), the prosecutor asked the defendant's grandmother whether she was aware that the grandson bought a car the day after the robbery, whether she had seen him drive it, and whether she had seen it parked in front of her house. None of the facts on which the questions were based were in evidence. The court held that any possible prejudice resulting from the questions was removed by the negative responses given by the grandmother and the cautionary instruction advising the jury not to assume as true any fact solely because it was included in a question. *State v. Butler,* 549 S.W.2d at 581.

The negative response by defendant could not remove the prejudice created in its asking. Defendant was asked whether she had any reason to know why her friend would say they had been at the house at 10:30, not whether her friend had made such a statement. Her negative response literally indicated ignorance of why Joanna Brown would make such a statement, not that the statement was never made or was untrue. Nor could an affirmative answer to the question have negated the statement of fact explicit in the question. *State v. Butler, supra,* is of no assistance to the state. The confrontation clause does guard against the introduction of information in this fashion. In *Mattox v. U.S.,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Supreme Court observed that the "primary object" of the confrontation clause "was to prevent depositions or ex parte affidavits, . . . being used against the prisoner in lieu of a personal examination and cross examination of the witness . . . ." *Mattox v. U.S.,* 156 U.S. at 242, 15 S.Ct. at 339. The prosecutor's only basis for the asking of the question in the instant case was to put before the jury the ex parte statement by Joanna Brown.

In *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Supreme Court reversed the conviction of a defendant where the prosecutor had been allowed, under the guise of refreshing a co-actor's memory on cross-examination, to read from the co-actor's confession. The Court held that the defendant's inability to cross-examine the co-actor, because the co-actor refused to answer questions per the fifth amendment, violated defendant's sixth amendment right of confrontation. This was true even though, as in the instant case, the prosecutor's reading of the confession was not technically testimony. The Court recognized that the reading "may well have been the equivalent in the jury's mind of testimony that [the co-actor] in fact made the statement." *Douglas v. Alabama,* 380 U.S. at 419, 85 S.Ct. at 1077.

Missouri, in *State v. Chernick,* 278 S.W.2d 741 (Mo.1955), held that a circuit attorney's question which contained the fact that after questioning a co-actor an arrest order was put out for defendant constituted prejudicial error. The implication of such testimony is, of course, that the co-actor "fingered" the defendant. As such, the testimony denies the defendant the right to cross-examine and "confront" his accuser. *State v. Chernick,* 278 S.W.2d at 748. The court's holding in *Chernick* evidenced the value that the court placed on the defendant's right to cross-examine and confront his accuser, because there was ample evidence in

that case apart from the hearsay to identify defendant with the crime charged. The opinion enumerates the evidence connecting defendant to the crime and describes it as "substantial." *State v. Chernick*, 278 S.W.2d at 745.

Again, in *State v. Kirkland*, 471 S.W.2d 191 (Mo.1971), the court reversed the conviction of a defendant for first degree robbery where a policeman was allowed to testify as to a third party's identification of defendant as the one who got into the victim's automobile. The court noted that the testimony denied defendant his right to cross-examine as secured by the confrontation clause, Mo. Const. Art. I, § 18(a), and so constituted prejudicial error. This was so even though there was other strong testimony on the issue of identity; the victim gave a detailed description of his assailants to the police shortly after the robbery, and the victim identified defendant at the police station within hours after the event. *State v. Kirkland*, 471 S.W.2d at 192–93. The court describes the third party's identity of defendant (through the officer's testimony) as "powerful corroborating evidence of identification." *Id.* at 193.

*State v. Ford*, 495 S.W.2d 408 (Mo. banc 1973), finds no error because the hearsay admitted was as to a fact not really in issue, the fact of a robbery and killing. The hearsay was only that a police officer went to the scene on a report of a robbery in progress. The hearsay in no way connected the defendant to the crime. *State v. Harris*, 535 S.W.2d 145 (Mo.App.1976), also found no error when the hearsay complained of was as to information received by an officer which caused him to undertake surveillance of a vehicle. The defendant was found in the car, but there was no evidence it was the defendant's car. The opinion points out that the hearsay in no way implicated the defendant or bore on his conviction except that he, with others, was apprehended in the vehicle. The police may have had, as the opinion notes, interest in the vehicle for reasons "totally unrelated to the defendant."

In *State v. Jones*, 583 S.W.2d 561 (Mo. App.1979), a jury found defendant guilty of first degree robbery. At trial a police officer testified that after talking to a co-suspect a "wanted" was put out for the arrest of defendant. The court found prejudicial error in the admission of the testimony over defendant's motion to limit the admissibility of the testimony or for mistrial. The court held the error prejudicial despite "other unchallenged evidence of guilt," citing its limited discretion to declare error harmless where there was any question that it might have influenced the jury. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972).

More nearly like the case at hand than any of the Missouri cases is *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981). At issue in *Warren* was the identity of a robber of the Chateau Briand restaurant. Tammie Moss, a cashier at the restaurant, had identified defendant as the robber at the preliminary hearing, but her identification was "highly questionable" after cross-examination. *State v. Warren*, 635 P.2d at 1238. Ms. Moss was unavailable as a witness at the trial. During cross-examination of defendant, the prosecutor established who Tammie Moss was, then asked defendant whether "Tammie Moss identified you as the robber of the Chateau Briand." *State v. Warren*, 635 P.2d at 1239. In reversing defendant's conviction, the court noted that the "result of the statement was to deny to the defendant his constitutional right of confrontation." *Id.* The "unprovoked statement of the prosecutor could not be considered harmless error" where the "issue of identification was hotly contested." *Id.* The admitted co-perpetrator of the robbery testified that defendant was his accomplice, and the proprietor of the restaurant, present at the robbery, identified defendant, so there was other evidence of identification.

Applying these principles to the facts of this case, there is prejudicial error. The defendant was denied her constitutional right to confront Joanna Brown by the prosecutor's "unprovoked statement" to the effect that Brown had told him that de-

fendant was at the scene of the fire at the time claimed by Roark and Wheat. The defendant could not negate by her answer the hearsay statement of Brown. The prosecutor asserted at trial that "the question was carefully phrased." It was not an inadvertance and was designed to accomplish what it did—give the state another "witness" who said the defendant was at the scene at 10:30 p.m., a "witness" who might be said to be a "friend" of the defendant, a "witness" who was not sworn in the case.

The settled law demonstrates this is but another example of "overkill" by the prosecution. Declarations of the responsibility of prosecuting officials to exercise restraint and assertions of the danger of error causing reversals in close cases do nothing to restrain such "overkill." The prosecution's voir dire on the issue of burden of proof in the instant case is an example of the disregard shown for such exhortations in the case law. The application of harmless error in the voir dire cases demonstrates the tendency to vitiate the rule of law and insulate error from review by finding error harmless.

The state has urged in its brief that the court's instruction to the jury read at the beginning of the case, MAI–CR 2d 2.02, directed the jury not to assume as true any fact because it was included in or suggested by a question asked the witness. The state further argues this removes any prejudice from the acknowledged error. The difficulty with this argument is that the instruction does not end with that explicit direction. The next sentence of the instruction is, "A question is not evidence, and may be considered only as it *supplies meaning* to the answer," (emphasis added). In the peculiar circumstance of this case, the question directed to the witness and the answer, taken together as the jury is directed by the instruction to do, present a situation where the fact contained in the question was affirmed, whichever answer the witness gave. The instruction does not direct the jury to disregard the assumed fact in the peculiar circumstances of the question here posed by the prosecutor and the answer of the witness.

As the state asserts, the matter is reviewable only as plain error under Rule 29.12(b). Although a defendant is not entitled to an error-free trial, a defendant is entitled to a trial in which the fundamental guarantees of the Constitution are afforded.

 Plain error review is discretionary, *State v. Wishom,* 578 S.W.2d 275 (Mo.App. 1978), and is the ultimate repository of an appellate court's power to correct injustice. *State v. Bainter,* 608 S.W.2d 429, 431 (Mo. App.1980). Plain error is not easily defined or discerned. *State v. Smith,* 595 S.W.2d 764 (Mo.App.1980). Overwhelming proof may prevent the application of plain error since it is demonstrable that no manifest injustice has occurred. *State v. Sykes,* 559 S.W.2d 643 (Mo.App.1977). Overwhelming proof does not invariably require the denial of plain error review. *State v. Smith, supra; State v. Charles,* 572 S.W.2d 193 (Mo. App.1978); *State v. Moon,* 602 S.W.2d 828 (Mo.App.1980). In the assessment of the effect of the proof, the nature of the error that has occurred must be considered.

In evaluating the situation with respect to plain error, special attention should be given to the nature of the error which has occurred. Some errors may be disregarded even though they constitute constitutional deprivations, provided that they "are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. State of California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). On the other hand, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman,* l.c. 23, 87 S.Ct. 827.

*State v. Smith, supra* at 766.

 Separate allegations of error may by accumulation have in the aggregate the dimension of plain error which, if viewed separately, would not constitute error sufficient to invoke plain error. *State v. Ellinger,* 549 S.W.2d 136 (Mo.App.1977). When

federal Constitutional rights basic to the integrity of the fact-finding process of im- plicating the due process right to a fair and impartial trial are involved, the plain error rule will be invoked. *State v. Wells*, 550 S.W.2d 793 (Mo.App.1977); *State v. Howell*, 543 S.W.2d 836 (Mo.App.1976). This review may even be undertaken sua sponte. *State v. Coyne*, 452 S.W.2d 227 (Mo.1970); *State v. Jackson*, 495 S.W.2d 80 (Mo.App.1973).

■ Several factors combine to make ap- plication of Rule 29.12(b) appropriate in this case. Failure to do so will stultify the settled rule that such cross-examination is improper and encourage flirtation with er- ror in other cases. *State v. Charles, supra; State v. Walker*, 490 S.W.2d 332, 336 (Mo. App.1973). The error in the admission of the evidence was utilized by the state in argument and was the result of a deliberate attempt to get the hearsay before the jury. *State v. Walker, supra* at 336. The error is compounded because it relates directly to the earlier error of the prosecution's com- ment on the burden of proof. *State v. Ellinger*, 549 S.W.2d 136, 139–140 (Mo.App. 1977); *State v. Heinrich*, 492 S.W.2d 109, 116 (Mo.App.1973). The error permitted the state to argue that *only* the defendant, among those who could know, denied the fact of presence at the scene, removing any doubt as to what the other independent witness might have said if present in per- son. The error is of constitutional dimen- sion involving as it does the right of con- frontation. *State v. Smith, supra; State v. Wells, supra; State v. Jordan*, 627 S.W.2d 290 (Mo. banc 1982). The case is a close one turning as it does on credibility. *State v. Ellinger, supra; State v. Jordan, supra*.

The case does not present the dilemma posed in cases like *State v. Moon*, 602 S.W.2d 828 (Mo.App.1980), or in *State v. Charles*, 572 S.W.2d 193 (Mo.App.1978), of a reversal in the face of overwhelming proof of guilt.

The egregious and deliberate action of the state in violating the settled rule as to proper cross-examination, thus violating de- fendant's constitutional right to confronta- tion, requires that the judgment be re- versed and the cause remanded for a new trial.