NO. 07-07-0465-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 30, 2009
                                       ______________________________

SAUL MENDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414170; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION 
          Raising five issues, appellant Saul Mendez appeals from his jury conviction for
murder and the assessment of a life sentence in the Institutional Division of the Texas
Department of Criminal Justice. We affirm.
Factual Background
          On September 18, 2006, Lubbock police officers investigated a white Suburban
vehicle found burning in north Lubbock. The vehicle was registered to Ozell Craft. 
Photographs show the interior of the Suburban was burned thoroughly, but officers found
several items that survived the fire, including keys to Craft’s house, a can of bleach and a
knife with “red stains on it.” Officers learned from Craft’s employer he did not come to work
that morning. 
          Officers went to Craft’s house located on 42nd Street in Lubbock, where they found
his body lying face down on the floor. He had been stabbed some sixty times, and
defensive wounds, overturned furniture and splattered blood indicated his death followed
a struggle. Except for the blood splatters and other indications of a struggle, the home was
neat and clean.
          After news reports about the burning Suburban, police received a Crime Line tip
about a Hispanic male seen driving Craft’s white Suburban.  
          Testimony showed appellant came to Lanny Menafee’s apartment in the early
morning hours of September 18. Although Menafee did not know the name of its owner,
he recognized the white Suburban appellant was driving. Menafee also recognized the
Suburban from television and news reports of its burning. 
          Menafee told the jury appellant asked him for help cleaning up “a mess.” He
mentioned fingerprints and walls and furniture, but blood was not mentioned. Menafee
advised him to use bleach and water. 
          Aretha Faye Smith testified she was living with Menafee, and was present when
appellant came to Menafee’s apartment. She remembered the visit took place earlier in
the evening, estimating it was between 10:00 p.m. and midnight. She did not see how
appellant arrived, but Menafee later told her appellant was in the Suburban. She also
connected the Suburban she saw on the news with Craft. She made the Crime Line call,
and acknowledged she received $1000 for the information. 
           Smith testified she heard appellant’s conversation with Menafee about cleaning up
fingerprints, and heard Menafee’s advice. Blood was not mentioned. Appellant said the
house where cleaning was needed was on 43rd or 42nd Street. Appellant tried to get
Menafee to help him clean, but Menafee refused. 
          Smith and Menafee said appellant was wearing a white t-shirt. Menafee said
appellant had red spots of blood on his pants. Smith did not notice anything on the t-shirt
but noticed something red on the bottom of his pants. She thought at the time it was paint.
           Menafee and Smith both said Linda Sue Farmer was present at Menafee’s
apartment the same evening. Farmer testified she was acquainted with Menafee and
walked to his apartment on September 17 or 18, where she saw Menafee outside, talking
with a man she identified as appellant. A few minutes after her arrival, she left with
appellant in a white SUV,


 and accompanied him to a duplex apartment. Farmer later
showed police the duplex to which she had gone with appellant. Police later searched the
apartment and found a sock with traces of Craft’s blood.
 
          Appellant shortly left Lubbock, and was arrested in Chicago on September 21. 
Tests showed a beer can found in Craft’s kitchen trash bore appellant’s fingerprints and
DNA, and his fingerprint and palm print were found on the bedroom door of Craft’s home.
          Appellant was indicted for Craft’s murder, and the jury found him guilty over his
contrary plea. Appellant timely filed an appeal. 
                                                                Analysis
Issue 1: Factual Sufficiency
           Appellant’s first issue challenges the factual sufficiency of the evidence supporting
his conviction. On direct appeal the court must begin its factual sufficiency review with the
assumption that the evidence is legally sufficient under Jackson v. Virginia, 443 U.S. 307,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Watson v. State, 204 S.W.3d 404, 406
(Tex.Crim.App. 2006); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). A
factual sufficiency review considers whether the evidence supporting guilt, though legally
sufficient, is so weak that the jury’s verdict seems clearly wrong and manifestly unjust, or
evidence contrary to the verdict is such that the jury’s verdict is against the great weight
and preponderance of the evidence. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); Watson, 204 S.W.3d
at 414-15. Ultimately in a factual sufficiency review, the appellate court must answer the
single question whether, considering all the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Grotti, 273 S.W.3d at 283,
citing Watson, 204 S.W.3d at 415. Circumstantial evidence is as probative as direct
evidence in establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). 
          Although an appellate court’s authority to review factual sufficiency permits the court
to disagree with the fact finder’s determinations, even to a limited degree those concerning
the weight and credibility of the evidence, the appellate court must accord them due
deference. Marshall, 210 S.W.3d at 625; Johnson v. State, 23 S.W.3d 1, 9 (Tex.Crim.App.
2000). See also Steadman v. State, 280 S.W.3d 242, 246-47 (Tex.Crim.App. 2009). Our
analysis must include a consideration of the evidence that, according to the appellant, most
undermines the jury's verdict. Lasiter v. State, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009);
Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
          Reiterated, the jury heard evidence that appellant’s finger and palm prints were found
on an interior door of Craft’s house; that appellant’s DNA was found on an empty beer can
left in the kitchen trash; that, during the night of September 18, appellant visited Menafee’s
home, asking for help cleaning up a mess and mentioning a location on 42nd or 43rd Street;
Craft lived on 42nd Street; appellant was advised to clean with bleach and rags, and police
officers found bleached rags in Craft’s kitchen sink;


 appellant was driving Craft’s suburban
when he visited Menafee’s home; Menafee and Smith saw blood stains on appellant’s pants;
appellant picked up a female at Menafee’s home and took her to a duplex apartment in which
he had resided and that was otherwise unoccupied; a sock with a small amount of Craft’s
blood was found on the floor of the duplex apartment; a witness saw a Hispanic male fitting
appellant’s description in the area where the burning Suburban was found; a knife with blood-like stains was found in the vehicle, along with a bleach can; appellant shortly left Lubbock
and traveled to Chicago.
          Correctly acknowledging that the evidence, and reasonable inferences from it, allow
the conclusion appellant was around Craft’s body after his murder, appellant nonetheless
contends it is factually insufficient to show appellant committed the murder. In support of his
contention, appellant points out there is no evidence of blood on the white t-shirt he was
wearing when he visited with Menafee and Smith, and argues the great amount of splattered
blood found at the scene and the apparent violence of Craft’s death would not have left
Craft’s assailant with a clean shirt. He further argues the evidence of Craft’s blood on
appellant’s sock and pants, and that he sought to clean up Craft’s home, simply show his
presence at the murder scene and a desire to remove the evidence of his presence.


 
           Appellant further points out Craft was a large man and had defensive wounds, further
indicating his death involved a violent struggle, but appellant exhibited no cuts or other
indications he had engaged in such a struggle. Appellant points to the medical examiner’s
statement that knife slippage associated with violent stabbing sometimes produces cuts to
an assailant’s hands. We note, however, the medical examiner also said such injuries occur
in “a minority of cases,” and opined that the absence of injuries on an assailant’s hands
“doesn’t mean anything.”
          We agree the evidence does not compel the inference appellant was Craft’s assailant
but we find the jury reasonably could have drawn an inference of appellant’s guilt from the
evidence it heard. Considering the role of the jury to draw reasonable inferences from the
evidence, Hooper, 214 S.W.3d at 15-17, and viewing the entire record in a neutral light, we
do not find the evidence favoring guilt is so weak that the jury’s verdict seems clearly wrong
and manifestly unjust or that, giving due consideration to the evidence contrary to the verdict,
the great weight and preponderance of all the evidence contradicts the jury’s verdict. The
evidence is factually sufficient. Appellant’s first issue is overruled.
Issue 2: Motion to Suppress
          In his second issue, appellant asserts the trial court erred by denying his request to
suppress evidence obtained in the duplex apartment despite written consent to search given
by the landlord. Appellant’s argument is founded on the holding that a landlord typically
cannot validly consent to the search of a house that he has rented to another. See Maxwell
v. State, 73 S.W.3d 278, 282 n.3 (Tex.Crim.App. 2002), citing Chapman v. United States, 365
U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). We review a trial court's ruling on a motion to
suppress evidence for an abuse of discretion by the court. Villarreal v. State, 935 S.W.2d
134, 138 (Tex.Crim.App.1996). In this review we give almost total deference to the trial court's
determination of historical facts and review the court's application of search and seizure law
de novo. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Therefore, we will
review the evidence in a light most favorable to the trial court's ruling and assume that the trial
court made implicit findings of fact supported by the record. Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex.Crim.App. 2000) (citations omitted). To find error, the court’s judgment
must be “outside the zone of reasonable disagreement” or not “reasonably supported by the
record.” State v. Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). 
          At the hearing on the motion to suppress, the State presented testimony from a police
officer and photographs of the apartment. Appellant’s uncles Alfred and Efrain Mendez, and
appellant, testified for appellant. Although they were not introduced, there was some
testimony about the contents of written statements Alfred and Efrain Mendez gave police a
day or two after the search. In the exercise of its fact-finding role, the trial court reasonably
could have determined, from testimony at the hearing, that no one was living in the apartment
on September 20; that appellant and his common-law wife previously had rented the
apartment but had paid only part of August’s rent and no rent for September; that the
common-law wife was residing in another place; that the apartment was owned by Efrain
Mendez and his sister; that they intended to re-rent the apartment as soon as it was cleaned
up; that the apartment was not rented to appellant; and that appellant had left town. On those
facts, the trial court reasonably could have concluded Efrain Mendez, the apartment’s owner,
had actual authority to consent to its search. See People v. Superior Court of Santa Clara
County, Respondent, Christopher Eugene Walker, Real Party in Interest, 49 Cal.Rptr. 831
(Cal.App. 2006) (owners of property may consent to police search when no other persons are
legitimately occupying it). See also People v. Carr (1972) 8 Cal.3d 287, 298, 104 Cal.Rptr.
705, 502 P.2d 513 (same).
Issue 3: Article 38.23 Jury Instruction
          In his third issue appellant maintains the trial court erred in denying his request for an
instruction under article 38.23(a) of the Texas Code of Criminal Procedure because the
evidence raised a fact issue on whether the consent to search the apartment was legally
obtained. By appellant’s view of the evidence, there existed a fact issue on the reasonableness
of the officer’s belief appellant’s uncles Alfred and Efrain Mendez had authority to consent to
search of the apartment. We disagree, and overrule the issue.
          There are three requirements to warrant an article 38.23 instruction: (1) the evidence
heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively
contested; and (3) the contested factual issue must be material to the lawfulness of the
challenged conduct in obtaining the evidence. Madden v. State, 242 S.W.3d 504, 510
(Tex.Crim.App. 2007). The requirement for establishing a factual dispute is simply that an “issue
[is] raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached,
or contradicted, and even when the trial court thinks that the testimony is not worthy of belief.” 
Walters v. State, 247 S.W.3d 204 (Tex.Crim.App. 2007). The evidence presented is viewed in
the light most favorable to the requested instruction. Bufkin v. State, 207 S.W.3d 779, 782
(Tex.Crim.App. 2006). However, only the testimony heard by the jury can be considered to
determine whether an article 38.23 instruction should be given. Madden, 242 S.W.3d at 510.
          Evaluating the evidence bearing on the reasonableness of the officers’ search based on
consent, we focus on the facts available to the them at the time. See Brimage v. State, 918
S.W.2d 466, 481 (Tex.Crim.App. 1994), citing Illinois v. Rodriguez, 497 U.S.177, 189, 110 S.Ct.
2793, 111 L.Ed.2d 148 (1990) (discussing apparent authority). Although appellant, and his
uncles Alfred and Efrain Mendez testified at the hearing on the motion to suppress, none of
them testified before the jury. As noted, case law holds a landlord typically cannot validly
consent to the search of a house that he has rented to another. Maxwell, 73 S.W.3d at 282 n.
3. Limiting our consideration to the evidence heard by the jury, we see no evidence affirmatively
contesting the State’s evidence the apartment was not rented when Alfred and Efrain Mendez
gave police consent to search it on September 20. In particular, we do not agree the impression
Officer Sutton formed on the previous day, before the officers’ contact with appellant’s uncles,
constitutes such evidence. See Madden, 242 S.W.3d at 513 (discussing affirmative evidence
requirement). 
Issue 4: Ineffective Assistance of Counsel
          In his fourth issue appellant asserts his trial counsel provided inadequate assistance
because he did not request a sudden passion instruction on punishment. 
          To prevail on a claim of ineffective assistance of counsel, a defendant must establish by
a preponderance of the evidence that his lawyer's performance fell below an objective standard
of reasonableness and that there is a “reasonable probability” the result of the proceeding would
have been different but for counsel's deficient performance. Strickland v. Washington, 466 U.S.
668, 693-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex.Crim.App. 2001). A reasonable probability is a probability sufficient to undermine
confidence in the outcome of the trial. Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Crim.App.1986). The purpose of this two-pronged test is to judge whether counsel's
conduct so compromised the proper functioning of the adversarial process that the trial cannot
be said to have produced a reliable result. Thompson v. State, 9 S.W.3d 808, 812-13
(Tex.Crim.App.1999).
          During the punishment phase of trial, a defendant may argue that he caused the death
while under the immediate influence of sudden passion arising from an adequate cause.
McKinney v. State, 179 S.W.3d 565, 569 (Tex.Crim.App. 2005); see Tex. Penal Code Ann. §
19.02(d) (Vernon 2003). “Sudden passion” is “passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which passion arises
at the time of the offense and is not solely the result of former provocation.” Tex. Penal Code
Ann. § 19.02(a)(2) (Vernon 2003). “Adequate cause” is “cause that would commonly produce
a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render
the mind incapable of cool reflection.” Tex. Penal Code Ann. § 19.02(a)(1). Sudden passion is
a mitigating factor that, if found by the fact finder to have been proven by a preponderance of
the evidence, reduces the offense from a first-degree felony to a second-degree felony. See
Tex. Penal Code Ann. § 19.02(c)-(d).
          A defendant seeking a jury instruction on sudden passion must prove there was an
adequate provocation; that a passion or an emotion such as fear, terror, anger, rage or
resentment existed; that the homicide occurred while the passion still existed and before there
was reasonable opportunity for the passion to cool; and there was a causal connection between
the provocation, the passion, and the homicide. McKinney v. State, 179 S.W.3d 565, 569
(Tex.Crim.App. 2005); Trevino v. State, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003). In
reviewing a case involving a sudden passion jury charge, it is our duty to focus on the evidence
supporting that charge, not on the evidence refuting it. Trevino, 100 S.W.3d at 239. On appeal,
appellant supports his argument he was entitled to a sudden passion instruction by first
contending the beer can with his DNA found at the scene supported a reasonable inference he
had been a welcome guest at Craft’s home at some point before the murder. Second, he
argues that music playing in the house when police arrived, the presence of a pornographic
DVD in the player, the belief expressed by Larry Menafee that Craft was bisexual, and the
notation by police that the button at the waist of Craft’s pants was unbuttoned when his body
was found all support a reasonable inference that Craft had attempted some sort of sexual crime
on appellant, inciting appellant’s rage and leading to the murder. Third, appellant highlights the
nature of the crime, noting (1) Craft was stabbed at least sixty times and, as the forensic
pathologist testified, this indicated rage on the part of his killer; (2) Craft’s bedroom appeared
to have been ransacked; (3) the door to the bedroom appeared to have been forced open; and
(4) appellant’s fingerprints were on the doorhandle. Appellant argues all these facts indicate “a
cause that would commonly produce a degree of . . . rage . . . [or] terror in a person of ordinary
temper, sufficient to render the mind incapable of cool reflection” and further, support a
reasonable inference of the adequate cause of the rage and murder. 
          The State acknowledges the forensic pathologist’s testimony that the number and cluster
of wounds on the victim’s back, when the victim may not have been offering resistance, was a
sign of rage motivating the killer. But, the State contends, the remainder of appellant’s
evidence is entirely speculative, and we must agree. Appellant argues the presence of his beer
can indicates a social visit with Craft. However, there was no alcohol in Craft’s blood at the time
of his death, and no evidence shows whether appellant drank the beer before or after Craft’s
death. Further, we cannot agree the facts that a heterosexual pornographic movie was playing
in the DVD player, that Craft’s pants were unbuttoned, and that one witness thought Craft was
bisexual or gay permit a reasonable inference Craft attempted to perpetrate a sexual crime on
appellant, inciting his rage and leading him to murder. See Hooper v. State, 214 S.W.3d 9, 16
(Tex.Crim.App. 2007) (distinguishing inference from speculation). 
          The evidence supporting a sudden passion instruction fails for at least two reasons. 
Although the pathologist testified that the manner of the killing indicated rage, neither his
testimony nor any other evidence addressed the adequacy of the supposed sexual advance to
produce such rage in a person of ordinary temper. Evidence is thus lacking that appellant’s rage
arose from an adequate provocation. McKinney, 179 S.W.3d at 569. Second, because of the
speculative nature of the evidence, it does not show the required causal connection between the
provocation, the passion and the stabbing. Id. Combined, the missing elements are of evidence
the asserted provocation would have produced a degree of rage in a person of ordinary temper
sufficient to cause that ordinary person to lose his sensibilities and respond by stabbing the victim
sixty times. If the evidence demonstrates no legally adequate cause, as is the case here, no
amount of subjective passion will justify submission of a sudden passion instruction. See Willis
v. State, 936 S.W.2d 302, 308 (Tex.App.–Tyler 1996, pet. ref’d) (defendant not entitled to a
reduced sentence for murder when his emotional responses are aberrational according to
societal norms). 
          Consequently, there was no reason for trial counsel to request an instruction on sudden
passion. Appellant has failed to rebut the strong presumption that his trial counsel's decision not
to request an instruction on sudden passion fell within the wide range of reasonable professional
assistance. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Thompson, 9 S.W.3d at 814. We
overrule appellant’s fourth issue.
Issue 5: Exclusion of evidence
          Via his fifth issue, appellant contends the trial court erred by barring him from asking a
police witness about police reports of complaints by two men in 1997 and 1998 accusing Craft
of attempted sexual assault. Appellant suggests that questioning officers about reports of Craft’s
possible attempted assaults would uncover potential alternative perpetrators of his murder. We
overrule the issue.
          Responding to the State’s objection to appellant’s attempt to question the officer about the
reports, his counsel told the court, “Your honor, I would like to go into two police reports with this
witness that he reviewed years earlier involving Mr. Craft as a suspect into [sic] attempted sexual
assaults. He reviewed them. He signed off on them. He felt there was credible evidence that
the event happened. I think this is relevant to establish whether there were other suspects in this
case considering what went on in the past regarding this . . . victim.” 
          The court asked counsel, “What other suspects?” Counsel responded, “Any other
suspects, Judge. When you have possible reports involving attempted sexual assault and you
have this sort of activities outlined in these police reports, it’s my submission . . . that opens up
the possibility of other suspects that they could have investigated. I want to ask him if they’re
trying to track down that line of investigation.” 
          Clarifying his theory to the court, counsel then said, “I’m saying that if this individual, Mr.
Craft, has a history of this type of behavior, then it is much more likely that there were other
people out there with either the reason or the means to have committed this act and that’s what
I want to ask about.”
          We initially confront the question whether counsel’s argument to the court was a sufficient
statement of what the excluded evidence would show to preserve error. See Guidry v. State, 9
S.W.3d 133, 153 (Tex.Crim.App. 1999) (error in exclusion of evidence not presented for review
absent statement of what excluded evidence would show). The State does not expressly
contend error was not preserved, so we will assume, arguendo, the issue is presented for review.
           Addressing “alternative perpetrator” evidence, the Court of Criminal Appeals has noted
that although an appellant certainly has a right to establish his innocence by showing that
someone else committed the crime, he still must show that his proffered evidence "is sufficient,
on its own or in combination with other evidence in the record, to show a nexus between the
crime charged and the alleged ‘alternative perpetrator.'" Wiley v. State, 74 S.W.3d 399, 406
(Tex.Crim.App. 2002). The nexus must include proof that the other person “committed some act
directly connecting him with the crime.” Wiley, 74 S.W.3d at 406 n.19 (quoting State v. Woods,
508 S.W.2d 297, 300 (Mo.App.1974)). In Wiley, the defendant identified a particular alternative
perpetrator but the Court of Criminal Appeals held that the probative value of the defendant’s
proffered evidence of his involvement was slight because of its speculative nature. The court
further held that even assuming the evidence had “some marginal relevance,” it would not
withstand the balancing required by Rule of Evidence 403. Wiley, 74 S.W.3d at 407. Here,
appellant does not contend that his proffered evidence even identifies a particular alternative
perpetrator, much less that the asserted perpetrator had committed some act directly connecting
him with Craft’s murder. Compared with the requirements outlined in Wiley, the proffer consisted
merely of “unsupported speculation that another person may have done the crime.” Id. at 407. 
The trial court did not abuse its discretion by excluding it.
          Having overruled all of appellant's issues, we affirm the trial court's judgment.        
                                                                           James T. Campbell

                                                                                     Justice

 
 
 
 
Do not publish.