NO. 07-07-0465-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 30, 2009
_____

SAUL MENDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414170; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Raising five issues, appellant Saul Mendez appeals from his jury conviction for murder and the assessment of a life sentence in the Institutional Division of the Texas Department of Criminal Justice.  We affirm.

Factual Background

On September 18, 2006, Lubbock police officers investigated a white Suburban vehicle found burning in north Lubbock.  The vehicle was registered to Ozell Craft.

Photographs show the interior of the Suburban was burned thoroughly, but officers found several items that survived the fire, including keys to Craft's house, a can of bleach and a knife with "red stains on it." Officers learned from Craft's employer he did not come to work that morning.

Officers went to Craft's house located on 42nd Street in Lubbock, where they found his body lying face down on the floor. He had been stabbed some sixty times, and defensive wounds, overturned furniture and splattered blood indicated his death followed a struggle. Except for the blood splatters and other indications of a struggle, the home was neat and clean.

After news reports about the burning Suburban, police received a Crime Line tip about a Hispanic male seen driving Craft's white Suburban.

Testimony showed appellant came to Lanny Menafee's apartment in the early morning hours of September 18. Although Menafee did not know the name of its owner, he recognized the white Suburban appellant was driving. Menafee also recognized the Suburban from television and news reports of its burning.

Menafee told the jury appellant asked him for help cleaning up "a mess." He mentioned fingerprints and walls and furniture, but blood was not mentioned. Menafee advised him to use bleach and water.

Aretha Faye Smith testified she was living with Menafee, and was present when appellant came to Menafee's apartment. She remembered the visit took place earlier in

the evening, estimating it was between 10:00 p.m. and midnight.  She did not see how appellant arrived, but Menafee later told her appellant was in the Suburban.  She also connected the Suburban she saw on the news with Craft.  She made the Crime Line call, and acknowledged she received $1000 for the information.

Smith testified she heard appellant's conversation with Menafee about cleaning up fingerprints, and heard Menafee's advice.  Blood was not mentioned.  Appellant said the house where cleaning was needed was on 43rd or 42nd Street.  Appellant tried to get Menafee to help him clean, but Menafee refused.

Smith and Menafee said appellant was wearing a white t-shirt.  Menafee said appellant had red spots of blood on his pants.  Smith did not notice anything on the t-shirt but noticed something red on the bottom of his pants.  She thought at the time it was paint.

Menafee and Smith both said Linda Sue Farmer was present at Menafee's apartment the same evening.  Farmer testified she was acquainted with Menafee and walked to his apartment on September 17 or 18, where she saw Menafee outside, talking with a man she identified as appellant.  A few minutes after her arrival, she left with appellant in a white SUV,[1] and accompanied him to a duplex apartment.  Farmer later showed police the duplex to which she had gone with appellant. Police later searched the apartment and found a sock with traces of Craft's blood.

---

[1] Farmer referred to the vehicle both as a Suburban and an Expedition.

Appellant shortly left Lubbock, and was arrested in Chicago on September 21. Tests showed a beer can found in Craft's kitchen trash bore appellant's fingerprints and DNA, and his fingerprint and palm print were found on the bedroom door of Craft's home.

Appellant was indicted for Craft's murder, and the jury found him guilty over his contrary plea. Appellant timely filed an appeal.

Analysis

*Issue 1: Factual Sufficiency*

Appellant's first issue challenges the factual sufficiency of the evidence supporting his conviction. On direct appeal the court must begin its factual sufficiency review with the assumption that the evidence is legally sufficient under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Watson v. State*, 204 S.W.3d 404, 406 (Tex.Crim.App. 2006); *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)*; Watson*, 204 S.W.3d at 414-15. Ultimately in a factual sufficiency review, the appellate court must answer the single question whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Grotti,* 273 S.W.3d at 283,

4

*citing Watson*, 204 S.W.3d at 415. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference. *Marshall*, 210 S.W.3d at 625; *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000). *See also Steadman v. State,* 280 S.W.3d 242, 246-47 (Tex.Crim.App. 2009). Our analysis must include a consideration of the evidence that, according to the appellant, most undermines the jury's verdict. *Lasiter v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Reiterated, the jury heard evidence that appellant's finger and palm prints were found on an interior door of Craft's house; that appellant's DNA was found on an empty beer can left in the kitchen trash; that, during the night of September 18, appellant visited Menafee's home, asking for help cleaning up a mess and mentioning a location on 42nd or 43rd Street; Craft lived on 42nd Street; appellant was advised to clean with bleach and rags, and police officers found bleached rags in Craft's kitchen sink;[2] appellant was driving Craft's suburban when he visited Menafee's home; Menafee and Smith saw blood stains on appellant's pants; appellant picked up a female at Menafee's home and took her to a duplex apartment in which he had resided and that was otherwise unoccupied; a sock with a small amount of Craft's

---

[2] Despite the presence of the bleach and rags, police could see no indication that any attempt had been made to clean the splattered blood from the home.

blood was found on the floor of the duplex apartment; a witness saw a Hispanic male fitting appellant's description in the area where the burning Suburban was found; a knife with blood-like stains was found in the vehicle, along with a bleach can; appellant shortly left Lubbock and traveled to Chicago.

Correctly acknowledging that the evidence, and reasonable inferences from it, allow the conclusion appellant was around Craft's body after his murder, appellant nonetheless contends it is factually insufficient to show appellant committed the murder. In support of his contention, appellant points out there is no evidence of blood on the white t-shirt he was wearing when he visited with Menafee and Smith, and argues the great amount of splattered blood found at the scene and the apparent violence of Craft's death would not have left Craft's assailant with a clean shirt. He further argues the evidence of Craft's blood on appellant's sock and pants, and that he sought to clean up Craft's home, simply show his presence at the murder scene and a desire to remove the evidence of his presence.[3]

Appellant further points out Craft was a large man and had defensive wounds, further indicating his death involved a violent struggle, but appellant exhibited no cuts or other indications he had engaged in such a struggle. Appellant points to the medical examiner's statement that knife slippage associated with violent stabbing sometimes produces cuts to an assailant's hands. We note, however, the medical examiner also said such injuries occur

---

[3] He also suggests the evidence could indicate appellant simply was helping the actual murderer. Elsewhere appellant notes the jury was not charged on the law of parties.

6

in "a minority of cases," and opined that the absence of injuries on an assailant's hands "doesn't mean anything."

We agree the evidence does not compel the inference appellant was Craft's assailant but we find the jury reasonably could have drawn an inference of appellant's guilt from the evidence it heard. Considering the role of the jury to draw reasonable inferences from the evidence, *Hooper*, 214 S.W.3d at 15-17, and viewing the entire record in a neutral light, we do not find the evidence favoring guilt is so weak that the jury's verdict seems clearly wrong and manifestly unjust or that, giving due consideration to the evidence contrary to the verdict, the great weight and preponderance of all the evidence contradicts the jury's verdict. The evidence is factually sufficient. Appellant's first issue is overruled.

*Issue 2: Motion to Suppress*

In his second issue, appellant asserts the trial court erred by denying his request to suppress evidence obtained in the duplex apartment despite written consent to search given by the landlord. Appellant's argument is founded on the holding that a landlord typically cannot validly consent to the search of a house that he has rented to another. *See Maxwell v. State*, 73 S.W.3d 278, 282 n.3 (Tex.Crim.App. 2002), *citing Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion by the court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). In this review we give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law *de novo*. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Therefore, we will

7

review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000) (citations omitted). To find error, the court's judgment must be "outside the zone of reasonable disagreement" or not "reasonably supported by the record." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

At the hearing on the motion to suppress, the State presented testimony from a police officer and photographs of the apartment. Appellant's uncles Alfred and Efrain Mendez, and appellant, testified for appellant. Although they were not introduced, there was some testimony about the contents of written statements Alfred and Efrain Mendez gave police a day or two after the search. In the exercise of its fact-finding role, the trial court reasonably could have determined, from testimony at the hearing, that no one was living in the apartment on September 20; that appellant and his common-law wife previously had rented the apartment but had paid only part of August's rent and no rent for September; that the common-law wife was residing in another place; that the apartment was owned by Efrain Mendez and his sister; that they intended to re-rent the apartment as soon as it was cleaned up; that the apartment was not rented to appellant; and that appellant had left town. On those facts, the trial court reasonably could have concluded Efrain Mendez, the apartment's owner, had actual authority to consent to its search. *See People v. Superior Court of Santa Clara County, Respondent, Christopher Eugene Walker, Real Party in Interest,* 49 Cal.Rptr. 831 (Cal.App. 2006) (owners of property may consent to police search when no other persons are legitimately occupying it). *See also People v. Carr* (1972) 8 Cal.3d 287, 298, 104 Cal.Rptr. 705, 502 P.2d 513 (same).

8

*Issue 3: Article 38.23 Jury Instruction*

In his third issue appellant maintains the trial court erred in denying his request for an instruction under article 38.23(a) of the Texas Code of Criminal Procedure because the evidence raised a fact issue on whether the consent to search the apartment was legally obtained. By appellant's view of the evidence, there existed a fact issue on the reasonableness of the officer's belief appellant's uncles Alfred and Efrain Mendez had authority to consent to search of the apartment. We disagree, and overrule the issue.

There are three requirements to warrant an article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007). The requirement for establishing a factual dispute is simply that an "issue [is] raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Walters v. State,* 247 S.W.3d 204 (Tex.Crim.App. 2007). The evidence presented is viewed in the light most favorable to the requested instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex.Crim.App. 2006). However, only the testimony heard by the jury can be considered to determine whether an article 38.23 instruction should be given. *Madden*, 242 S.W.3d at 510.

Evaluating the evidence bearing on the reasonableness of the officers' search based on consent, we focus on the facts available to the them at the time. *See Brimage v. State*, 918 S.W.2d 466, 481 (Tex.Crim.App. 1994), *citing Illinois v. Rodriguez*, 497 U.S.177, 189, 110 S.Ct.

9

2793, 111 L.Ed.2d 148 (1990) (discussing apparent authority). Although appellant, and his uncles Alfred and Efrain Mendez testified at the hearing on the motion to suppress, none of them testified before the jury. As noted, case law holds a landlord typically cannot validly consent to the search of a house that he has rented to another. *Maxwell*, 73 S.W.3d at 282 n. 3. Limiting our consideration to the evidence heard by the jury, we see no evidence affirmatively contesting the State's evidence the apartment was not rented when Alfred and Efrain Mendez gave police consent to search it on September 20. In particular, we do not agree the impression Officer Sutton formed on the previous day, before the officers' contact with appellant's uncles, constitutes such evidence. *See Madden*, 242 S.W.3d at 513 (discussing affirmative evidence requirement).

*Issue 4: Ineffective Assistance of Counsel*

In his fourth issue appellant asserts his trial counsel provided inadequate assistance because he did not request a sudden passion instruction on punishment.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 693-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex.Crim.App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The purpose of this two-pronged test is to judge whether counsel's

10

conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex.Crim.App.1999).

During the punishment phase of trial, a defendant may argue that he caused the death while under the immediate influence of sudden passion arising from an adequate cause. *McKinney v. State*, 179 S.W.3d 565, 569 (Tex.Crim.App. 2005); *see* Tex. Penal Code Ann. § 19.02(d) (Vernon 2003). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann. § 19.02(a)(2) (Vernon 2003). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1). Sudden passion is a mitigating factor that, if found by the fact finder to have been proven by a preponderance of the evidence, reduces the offense from a first-degree felony to a second-degree felony. *See* Tex. Penal Code Ann. § 19.02(c)-(d).

A defendant seeking a jury instruction on sudden passion must prove there was an adequate provocation; that a passion or an emotion such as fear, terror, anger, rage or resentment existed; that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and there was a causal connection between the provocation, the passion, and the homicide. *McKinney v. State*, 179 S.W.3d 565, 569 (Tex.Crim.App. 2005)*; Trevino v. State*, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003). In

11

reviewing a case involving a sudden passion jury charge, it is our duty to focus on the evidence supporting that charge, not on the evidence refuting it. *Trevino*, 100 S.W.3d at 239. On appeal, appellant supports his argument he was entitled to a sudden passion instruction by first contending the beer can with his DNA found at the scene supported a reasonable inference he had been a welcome guest at Craft's home at some point before the murder. Second, he argues that music playing in the house when police arrived, the presence of a pornographic DVD in the player, the belief expressed by Larry Menafee that Craft was bisexual, and the notation by police that the button at the waist of Craft's pants was unbuttoned when his body was found all support a reasonable inference that Craft had attempted some sort of sexual crime on appellant, inciting appellant's rage and leading to the murder. Third, appellant highlights the nature of the crime, noting (1) Craft was stabbed at least sixty times and, as the forensic pathologist testified, this indicated rage on the part of his killer; (2) Craft's bedroom appeared to have been ransacked; (3) the door to the bedroom appeared to have been forced open; and (4) appellant's fingerprints were on the doorhandle. Appellant argues all these facts indicate "a cause that would commonly produce a degree of . . . rage . . . [or] terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection" and further, support a reasonable inference of the adequate cause of the rage and murder.

The State acknowledges the forensic pathologist's testimony that the number and cluster of wounds on the victim's back, when the victim may not have been offering resistance, was a sign of rage motivating the killer. But, the State contends, the remainder of appellant's evidence is entirely speculative, and we must agree. Appellant argues the presence of his beer can indicates a social visit with Craft. However, there was no alcohol in Craft's blood at the time

12

of his death, and no evidence shows whether appellant drank the beer before or after Craft's death. Further, we cannot agree the facts that a heterosexual pornographic movie was playing in the DVD player, that Craft's pants were unbuttoned, and that one witness thought Craft was bisexual or gay permit a reasonable inference Craft attempted to perpetrate a sexual crime on appellant, inciting his rage and leading him to murder. *See Hooper v. State,* 214 S.W.3d 9, 16 (Tex.Crim.App. 2007) (distinguishing inference from speculation).

The evidence supporting a sudden passion instruction fails for at least two reasons. Although the pathologist testified that the manner of the killing indicated rage, neither his testimony nor any other evidence addressed the adequacy of the supposed sexual advance to produce such rage in a person of ordinary temper. Evidence is thus lacking that appellant's rage arose from an adequate provocation. *McKinney*, 179 S.W.3d at 569. Second, because of the speculative nature of the evidence, it does not show the required causal connection between the provocation, the passion and the stabbing. *Id*. Combined, the missing elements are of evidence the asserted provocation would have produced a degree of rage in a person of ordinary temper sufficient to cause that ordinary person to lose his sensibilities and respond by stabbing the victim sixty times. If the evidence demonstrates no legally adequate cause, as is the case here, no amount of subjective passion will justify submission of a sudden passion instruction. *See Willis v. State,* 936 S.W.2d 302, 308 (Tex.App.–Tyler 1996, pet. ref'd) (defendant not entitled to a reduced sentence for murder when his emotional responses are aberrational according to societal norms).

Consequently, there was no reason for trial counsel to request an instruction on sudden passion. Appellant has failed to rebut the strong presumption that his trial counsel's decision not to request an instruction on sudden passion fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Thompson,* 9 S.W.3d at 814. We overrule appellant's fourth issue.

*Issue 5: Exclusion of evidence*

Via his fifth issue, appellant contends the trial court erred by barring him from asking a police witness about police reports of complaints by two men in 1997 and 1998 accusing Craft of attempted sexual assault. Appellant suggests that questioning officers about reports of Craft's possible attempted assaults would uncover potential alternative perpetrators of his murder. We overrule the issue.

Responding to the State's objection to appellant's attempt to question the officer about the reports, his counsel told the court, "Your honor, I would like to go into two police reports with this witness that he reviewed years earlier involving Mr. Craft as a suspect into [sic] attempted sexual assaults. He reviewed them. He signed off on them. He felt there was credible evidence that the event happened. I think this is relevant to establish whether there were other suspects in this case considering what went on in the past regarding this . . . victim."

The court asked counsel, "What other suspects?" Counsel responded, "Any other suspects, Judge. When you have possible reports involving attempted sexual assault and you have this sort of activities outlined in these police reports, it's my submission . . . that opens up

14

the possibility of other suspects that they could have investigated. I want to ask him if they're trying to track down that line of investigation."

Clarifying his theory to the court, counsel then said, "I'm saying that if this individual, Mr. Craft, has a history of this type of behavior, then it is much more likely that there were other people out there with either the reason or the means to have committed this act and that's what I want to ask about."

We initially confront the question whether counsel's argument to the court was a sufficient statement of what the excluded evidence would show to preserve error. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999) (error in exclusion of evidence not presented for review absent statement of what excluded evidence would show). The State does not expressly contend error was not preserved, so we will assume, *arguendo*, the issue is presented for review.

Addressing "alternative perpetrator" evidence, the Court of Criminal Appeals has noted that although an appellant certainly has a right to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence "is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Wiley v. State,* 74 S.W.3d 399, 406 (Tex.Crim.App. 2002). The nexus must include proof that the other person "committed some act directly connecting him with the crime." *Wiley*, 74 S.W.3d at 406 n.19 (quoting *State v. Woods,* 508 S.W.2d 297, 300 (Mo.App.1974)). In *Wiley*, the defendant identified a particular alternative perpetrator but the Court of Criminal Appeals held that the probative value of the defendant's proffered evidence of his involvement was slight because of its speculative nature. The court

15

further held that even assuming the evidence had "some marginal relevance," it would not withstand the balancing required by Rule of Evidence 403. *Wiley*, 74 S.W.3d at 407. Here, appellant does not contend that his proffered evidence even identifies a particular alternative perpetrator, much less that the asserted perpetrator had committed some act directly connecting him with Craft's murder. Compared with the requirements outlined in *Wiley*, the proffer consisted merely of "unsupported speculation that another person may have done the crime." *Id*. at 407. The trial court did not abuse its discretion by excluding it.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

James T. Campbell
Justice

Do not publish.